O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DARLING PATRICIA PINEDA SEVILLA,

Petitioner,

v.

KRISTI NOEM, et al.,

Respondents.

Case No. 5:26-cv-03770-KES

ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY

## I.   INTRODUCTION

Darling Patricia Pineda Sevilla ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").  The parties have consented to the jurisdiction of the Magistrate Judge.  (Dkt. 10.)  The Petition is granted and Respondents are directed to immediately release Petitioner from custody.

## II.   PROCEDURAL HISTORY

Petitioner filed the present Petition on July 8, 2026.  (Dkt. 1.)  The Petition

1

raises the following claims:

Ground 1: Petitioner's detention is unlawful under the Immigration and Nationality Act ("INA") because she is detained "detained pursuant to an unlawful and unauthorized application of 8 U.S.C. § 1225(b)(2)(A), despite being an interior resident of the United States who was apprehended more than twenty years after entering the country…." (Pet. at 24, ¶ 84.) "Respondents have applied the wrong statutory framework and have deprived Petitioner of the custody procedures Congress provided for individuals detained under § 1226(a)." (Pet. at 25, ¶ 88; see also id. at 11, ¶ 41 (citing Maldonado Bautista v. Santacruz, 813 F. Supp. 3d 1084 (C.D. Cal. 2025) ("Maldonado Bautista")).)

Ground 2: Respondents violated Petitioner's rights under the Fifth Amendment Due Process Clause. (Pet. at 25, ¶ 94.) "Because Petitioner is detained pursuant to the discretionary detention framework of 8 U.S.C. § 1226(a), due process requires an individualized custody determination evaluating whether continued detention is necessary. The constitutional adequacy of the procedures provided is assessed under the balancing framework articulated in Mathews v. Eldridge, 424 U.S. 319 (1976)." (Pet. at 26, ¶ 96.)

Ground 3: Respondents violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), because "Respondents' interpretation and application of § 1225(b)(2)(A) to Petitioner is contrary to the text, structure, and purpose of the" INA and is "arbitrary and capricious." (Pet. at 29-30, ¶¶ 117, 120.)

The Petition seeks immediate release from custody or, alternatively, "a prompt custody determination under 8 U.S.C. § 1226(a), to be held within seven (7) days, before a neutral Immigration Judge, at which Respondents bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is necessary to prevent flight or protect the community and that no less restrictive conditions of release would reasonably satisfy the Government's legitimate interests." (Pet. at 31.)

2

Respondents answered the Petition on July 14, 2026.  ("Answer" at Dkt. 12.) The Answer does not dispute any of the facts alleged in the Petition or attach any evidence.  Respondents concede that Petitioner "appears to be a member of the Bond Eligible Class certified in" Maldonado Bautista.  (Id. at 3.)  They argue, "While Petitioner seeks immediate release, to the extent Petitioner would be entitled to any remedy … at most it would be ordering a bond hearing to be held before an Immigration Judge under Section 1226(a)."  (Id.)  They also argue that her APA claim fails because it does not challenge "final agency action."  (Id. at 4.)

Petitioner replied on July 20, 2026.  ("Reply" at Dkt. 13.)  Petitioner argues that release, rather than a bond hearing, is the appropriate remedy because (a) Petitioner "has been unlawfully detained under the wrong statutory framework since June 24, 2026, and has been categorically denied any opportunity to seek release"; and (b) "civil immigration detention is justified only where it is necessary to prevent flight or protect the community, and … neither interest is served by Petitioner's confinement…." (Id. at 2, ¶ 3; id. at 6, ¶ 16.)

## III.   FACTUAL RECORD

Petitioner is a native and citizen of Nicaragua.  (Pet. at 5, ¶ 20.)  She entered the U.S. without inspection in approximately August 2005.  (Pet. at 5, ¶ 20.)

She has lived in the U.S. for more than twenty years.  (Pet. at 5, ¶ 20.)  She is married to a U.S. citizen and has two U.S.-citizen children and two U.S.-citizen grandchildren.  (Pet. at 5-6, ¶ 21.)  She provides regular childcare for her grandchildren while her daughter works.  (Pet. at 6, ¶ 21.)  She also serves as the primary caregiver for her husband following his heart attack and subsequent angioplasty with stent placement in 2023.  (Pet. at 6, ¶ 21.)  She has no criminal history.  (Pet. at 1, ¶ 2; see also id. at 6, ¶ 23 ("As part of her immigrant visa process, she recently obtained a certified police clearance from the Republic of Nicaragua confirming that she has no criminal record.").)

On or about July 26, 2023, U.S. Citizenship and Immigration Services

("USCIS") approved the Form I-13 immigration petition filed on Petitioner's behalf by her husband, thereby "establishing the qualifying family relationship necessary for her to pursue lawful permanent residence through consular process." (Pet. at 6, ¶ 24.)

"At some point following her entry into the U.S.," DHS initiated removal proceedings against Ms. Pineda Sevilla before the Immigration Court.  (Pet. at 6, ¶ 25.)  On October 9, 2025, an immigration judge ("IJ") granted Petitioner's motion to reopen and dismiss her removal proceedings.  (Pet. at 6, ¶ 26.)  "As a result of that order, [Petitioner] was no longer subject to a final order of removal." (Pet. at 6, ¶ 26.)

Meanwhile, Petitioner continued to pursue lawful permanent resident status. She filed a Form I-601A, Application of Provisional Unlawful Presence Waiver, and USCIS scheduled her to appear to for a biometrics collection on June 24, 2026 in Riverside, California.  (Pet. at 7, ¶ 27.)

On June 24, 2026, Petitioner appeared as directed for the biometrics appointment.  (Pet. at 2, ¶ 3.)  Instead, ICE officers arrested her.  (Pet. at 2, ¶ 3; id. at 7, ¶ 29.)  She remains in custody in Adelanto, California.  (Pet. at 2, ¶ 3); ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 200-112-643 (Nicaragua), last accessed July 24, 2026).

Four days after her arrest, on June 28, 2026, Petitioner was served with a notice to appear ("NTA") initiating new removal proceedings against her.  (Pet. Ex. A / Dkt. 1-1.)  Those proceedings remain pending.  See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 200-112-643 (Nicaragua), last accessed July 24, 2026).

"Since taking [Petitioner] into custody, ICE officers have repeatedly urged her to accept voluntary departure."  (Pet. at 8, ¶ 33.)  She "has consistently refused because she wishes to continue pursuing the family-based immigration relief for

4

which she voluntarily appeared before USCIS." (Pet. at 8, ¶ 33.) Her current detention has "halted her pursuit of lawful permanent residence by preventing her from completing the biometrics appointment that USCIS required in order to continue processing her pending Form I 601A application." (Pet. at 8, ¶ 34.)

Petitioner "suffers from serious chronic medical conditions—including diabetes, hyperthyroidism, and hypertension—that continued detention at the Adelanto ICE Processing Center places at risk." (Reply at 2.)

## IV.    DISCUSSION

### A.    Petitioner is Entitled to Relief on Ground 1, Because Respondents Concede that She is a *Maldonado Bautista* Class Member.

Petitioner is entitled to relief because, as Respondents admit, she is a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), appeal filed, Bautista v. DHS, No. 25-7958 (9th Cir.). Normally, the appropriate remedy for this claim is an individualized bond hearing. See, e.g., Rathi v. Warden of Desert View Annex Det. Facility, No. 5:26-cv-01174-WLH-AYP, 2026 WL 795298, 2026 U.S. Dist. LEXIS 61360 (C.D. Cal. Mar. 18, 2026). However, as discussed below, Petitioner is entitled to release from custody under Ground 2 of the Petition.

### B.    Petitioner is Entitled to Relief on Ground 2, Because She is Entitled to a Pre-Deprivation Hearing Under Due Process Principles.

#### 1.    Legal Standard.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

5

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

### 2.      Analysis.

Under the factors set forth in Mathews, the Court finds that due process required Respondents to provide Petitioner with a pre-deprivation hearing before her arrest. She is therefore entitled to both immediate release from custody and prospective injunctive relief to prevent future violations of her rights.

####             a.       Liberty interest and private interest affected

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner has a reliance interest on the "implied promise" that immigration authorities would not revoke her liberty, and that reliance was justifiable given that she has remained in the country without incident for two decades. See, e.g., Garcia v. Semaia, No. 26-cv-01525-MWC-RAO, 2026 WL 966575, at *3 (C.D. Cal. Apr. 7, 2026). Cf. Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025). Moreover, "Her detention has separated her from her family, interrupted her caregiving responsibilities, and

prevented her from continuing the lawful immigration process she had been diligently pursuing." (Pet. at 26, ¶ 98.) Accordingly, Petitioner's private interest in remaining free from detention is significant.

                        b.      Risk of an erroneous deprivation and value of additional procedural safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

Although neither party has provided specific facts about when or why Petitioner was released from custody while her removal case was pending prior to 2025, such a release means DHS necessarily determined that she was not a danger to the community or flight risk. See generally 8 U.S.C. § 1226(a) (providing that DHS may detain a noncitizen "pending a decision on whether the alien is to be removed from the United States" or may release them on bond or conditional parole); 8 C.F.R. § 236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").

Respondents have never explained—either to Petitioner at the time of her arrest or in the present proceedings—what factual basis ICE has (if any) for changing that determination. A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner

an opportunity to challenge that evidence. This is a significant procedural safeguard.

### c.    Countervailing government interest.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (C.D. Cal. Mar. 18, 2026) (collecting cases); Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026). Here, Respondents have not disputed Petitioner's assertions that she has no criminal history and has established strong ties in the U.S. during her two-decade-long residence here.

Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose a minimal cost. In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days. In fact, Respondents admit that would be possible in this case. (See Answer at 3 ("To the extent a bond hearing is ordered here, it should be consistent with what Courts in this District have generally ordered in similar cases, which is to require an 8 U.S.C. § 1226(a) hearing to be provided in seven days.").)

### d.    Appropriate remedy is release, not post-deprivation hearing.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing.

8

Many courts have found that a post-detention bond hearing is insufficient in this context.  See Gudavasov, 2026 WL 712827, at *3 (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief."); Garcia v. Semaia, No. 26-cv-01525-MWC-RAO, 2026 WL 966575, at *3 (C.D. Cal. Apr. 7, 2026) ("Given the severe delay that comes with the receipt of post-deprivation bond hearings, and since the Ninth Circuit has recognized the 'irreparable harms imposed on anyone subject to immigration detention,' including 'subpar medical and psychiatric care in ICE detention facilities,' see Hernandez v. Sessions, 872 F.3d 976, 995 (2017), a post-deprivation bond hearing cannot undo those harms.").[1]

In fact, courts most frequently find that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights.  See, e.g., Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 882 (C.D. Cal. 2026) (enjoining respondent "from re-detaining Petitioner without providing him a pre-detention hearing before a neutral decisionmaker where Respondent bears the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that

---

[1] Aguilar v. Semaia, No. 26-cv-00023-MCS-SSC, 2026 WL 166906 (C.D. Cal. Jan. 16, 2026)—a case in which the court found that a post-deprivation hearing was sufficient relief—is factually distinguishable because Aguilar "received significantly more process than in other cases in which courts have granted relief under Mathews," including appointment of counsel in his immigration case (due to incompetency) and a recent, post-arrest hearing before an IJ. Id. at *5.

his physical custody is required").

## V.   CONCLUSION

IT IS THEREFORE ORDERED that:

1.   The Petition is granted.

2.   Respondents shall **immediately release** Darling Patricia Pineda Sevilla (A# 200-112-643) from custody.

3.   If Respondents have not released Petitioner **within three days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.

4.   Respondents shall not re-detain Petitioner without providing her with a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.[2]

5.   Petitioner is not subject to detention under 8 U.S.C. § 1225(b)(2)(A).

DATED: July 24, 2026

_Karen E. Scott_

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

---

[2] To the extent Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).